In the Matter of the DEATH OF Fred D. PETERKIN (Deceased).

Gloria PETERKIN, Petitioner,

v.

The INDUSTRIAL COMMISSION of the State of Colorado; Curtis, Inc.; Great West Casualty Co.; and Director of Division of Labor and Employment, Respondents.

No. 83CA1295.

Colorado Court of Appeals, Div. II.

Jan. 17, 1985.

Rehearing Denied Feb. 7, 1985.

Certiorari Granted April 22, 1985.

Jack Kintzele, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Timothy R. Arnold, First Asst. Atty. Gen., Lynn L. Palma, Asst. Atty. Gen., Denver, for respondents Indus. Com'n and Director of Div. of Labor and Employment.

DeMoulin, Anderson, Campbell and Laugesen, P.C., Robert L. McGahey, Jr., Denver, for respondents Curtis, Inc. and Great West Cas. Co.

KELLY, Judge.

In this workmen's compensation case, the claimant, Gloria Peterkin, seeks review of final orders of the Industrial Commission suspending the payment of benefits to her and her minor child, Brian Peterkin, as the surviving dependents of Fred Peterkin, deceased. Claimant also seeks review of the order denying her motion to require the decedent's employer, Curtis, Inc., and its compensation insurance carrier, Great West Casualty Company, to pay reasonable attorneys' fees on all amounts which they recovered or were relieved of paying in the future as a result of a settlement obtained by claimant in a wrongful death action against third parties. We affirm.

On December 5, 1980, while acting within the course and scope of his employment for Curtis, Inc., Fred Peterkin was fatally injured in a truck accident in Junction City, Kansas. On February 23, 1981, claimant, decedent's widow, filed a claim on behalf of herself and her child, Brian, for workmen's compensation death benefits. By order dated December 8, 1981, claimant and her child were awarded death benefits of $244.65 per week, payable up to the maximum amount of $100,000.

Claimant also commenced a wrongful death action in the United States District Court for the District of Kansas against third-party tortfeasors involved in the accident resulting in Fred Peterkin's death. The wrongful death action was ultimately settled for $100,000. In a journal entry dated July 2, 1982, the court in Kansas determined that:

"[T]he employer or its insurance carrier will have a lien for amounts it has paid or will pay in the future as and for workers' compensation benefits arising out of the wrongful death of Fred Peterkin, deceased. The Court further finds that plaintiffs' attorneys are entitled to a reasonable fee for any amounts reim-

bursed to the employer or its insurance carrier...."

On August 3, 1982, the court ordered that the settlement funds be distributed as follows: $33,361.18 to the claimant individually; $22,240.78 to the claimant as the conservator of the estate of Brian Peterkin; $27,800 to claimant's attorneys for legal fees; $3,730 to claimant's attorneys for reimbursement of expenses; $12,768.04 to Great West and claimant's attorneys in satisfaction of the insurance carrier's lien for benefits previously paid; and $100 to an attorney who acted as guardian ad litem for Brian Peterkin.

By a subsequent clarifying order dated February 18, 1983, the court ruled that:

"Great West Casualty Company is ordered to pay one-third of the amount of $12,768.04 to plaintiff's counsel as a reasonable attorney's fee in this case."

Great West appealed the order of February 18, 1983, but the appeal was dismissed because Great West was not a party to the action.

Meanwhile, on November 22, 1982, Great West and the employer filed a motion in the Colorado workmen's compensation proceeding to suspend the payment of benefits to claimant and Brian Peterkin. In response, claimant filed a motion requesting an award of attorneys' fees on all amounts that Great West would recover or be relieved of paying as a result of the $100,000 settlement of the wrongful death action.

The hearing officer concluded that Great West was entitled to be reimbursed for all benefits previously paid and to be relieved of paying benefits in the future until the gross settlement amount of $100,000 was recovered. The hearing officer further concluded that there was no statutory authority which would permit claimant to recover attorneys' fees from the employer or its insurance carrier. The Commission adopted and affirmed the order of the hearing officer.

## I. Attorneys' Fees

■ Claimant contends here that the director of the Division of Labor and Employ-

ment and the Commission were bound by the United States District Court orders entered in the wrongful death action. We disagree.

■ The powers and authority of the Commission are derived solely from statute and its powers and any limitation thereon cannot be waived, enlarged, diminished, or destroyed by consent, and cannot be estopped. *See Industrial Commission v. Plains Utility Co.*, 127 Colo. 506, 259 P.2d 282 (1953). Contrary to claimant's assertion, the denial of her motion for attorneys' fees did not constitute a "collateral attack" on the United States District Court orders. The Commission made no determination as to the validity or effect of such orders, but concluded only that it lacked the authority or power to award attorneys' fees to claimant or to enforce the court orders. There is no statutory authority which would permit either the director or the Commission to require an employer or its insurance carrier to pay a claimant's attorneys' fees on amounts recovered by them as a result of a third-party settlement.

We also reject claimant's contention that the court orders were binding on the employer or Great West under the doctrine of *res judicata* or the doctrine of collateral estoppel. Although the doctrines of *res judicata* and collateral estoppel are applicable in certain circumstances to administrative proceedings, *see Umberfield v. School District No. 11*, 185 Colo. 165, 522 P.2d 730 (1974); *Jefferson County School District No. R-1 v. Industrial Commission*, 698 P.2d 1350 (Colo.App.1984), these doctrines can have no applicability to an administrative proceeding in which the agency lacks jurisdiction to grant the requested relief. Obviously, the United States District Court orders here could not confer upon the director or the Commission an authority or power beyond that given by statute.

## II. Suspension of Benefits

■ Under § 8-52-108, C.R.S., Great West was entitled to recover out of the settlement proceeds of the wrongful death action the amount of benefits previously

paid. *See Kirkham v. Hickerson Bros. Truck Co.,* 29 Colo.App. 303, 485 P.2d 513 (1971). Great West was also entitled to an order suspending the payment of compensation in the future. *See Berry Construction, Inc. v. Industrial Commission,* 39 Colo.App. 251, 567 P.2d 806 (1977).

The claimant finally asserts that there must be a deduction for the attorneys' fees and expenses incurred by claimant in obtaining the settlement before Great West offsets the payment of future benefits against the gross amount of the settlement. We disagree.

■ Section 8–52–108, C.R.S., requires that the state compensation fund or the private insurance carrier be subrogated to the full amount of their workmen's compensation liability in the event an injured employee obtains a recovery of damages from a third party. *Continental Casualty Co. v. Gate City Steel,* 650 P.2d 1336 (Colo. App.1982). Section 8–52–108(1), C.R.S., expressly provides that the election by an injured employee to take compensation under the Act shall operate as an assignment to the compensation carrier of any cause of action against third parties. It further provides that the assignment "include[s] all compensation ... and other benefits and expenses to which the employee or his dependents are entitled ... or for which his employer or insurance carrier is liable or has assumed liability." Thus, the first claim against any funds actually recovered by the injured employee against a third party belongs to the party responsible for the payment of compensation benefits, although the excess belongs to the employee. Section 8–52–108(1), C.R.S.; *State Compensation Insurance Fund v. Commercial Union Insurance Co.,* 631 P.2d 1168 (Colo.App.1981); *Kirkham v. Hickerson Bros. Truck Co., supra.*

Section 8–52–108(2), C.R.S., provides as follows:

"Such a cause of action assigned to the division of the state compensation insurance fund may be prosecuted or compromised by it. A compromise of any such cause of action by the employee or his dependents at an amount less than the compensation provided for by articles 40 to 54 of this title shall be made only with the written approval of the manager of the state compensation insurance fund, if the deficiency of compensation would be payable from the state compensation insurance fund, and otherwise with the written approval of the person, association, corporation, or insurance carrier liable to pay the same."

Pursuant to this subsection, the party liable to pay compensation may, without limitation, bring and compromise any such third-party suit; however, an injured employee who brings the suit may not compromise it for less than the amount needed to reimburse in full the party liable to pay compensation without that party's written consent. Hence, we hold that where, as here, there is no written consent from the party liable for compensation payments, the successful claimant in the third-party suit may not reduce the amount of the subrogation required by § 8–52–108(1) by unilaterally entering into a compromise agreement the ultimate result of which is to pay a portion of the recovery to counsel as attorneys' fees incurred in the third-party action. Since the legislative mandate is plain in the language of the statute, we may not defeat this intent by judicial interpretation. *See Tompkins v. DeLeon,* 197 Colo. 569, 595 P.2d 242 (1979).

The order of the commission is affirmed.

SMITH, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

The statute involved here is § 8–52–108(1), C.R.S., which reads in pertinent part:

"If the injured employee elects to proceed against such other person, the ... insurance carrier ... shall contribute

only the deficiency, if any, between the amount of the recovery against such other person *actually collected* and the compensation provided by said articles in such case." (emphasis added)

In this matter, the claimants actually collected $55,601.96. Contrary to the carrier's contention, the statute does not refer to "gross" recovery. Thus, I would follow the wording of the statute and construe the carrier's rights to set-off to be limited to the sum "actually collected" by the claimants, and would rule that it is allowed to suspend benefits only to that extent. *See* 2A A. Larson, *Workmen's Compensation Law* § 74(a)(3) (1983).

Although it would have been better practice for the attorneys for claimants to have sought written approval of the carrier before permitting claimants to settle their claim against the third party, the failure to do so does not per se cause a forfeiture of costs reasonably incurred in pursuit of the claim. To charge the widow and children of the decedent with costs that were reasonably incurred and which inure to the benefit of the carrier is inconsistent with the basic purpose of the Workmen's Compensation Act.

The Act must be given a liberal construction to effectuate its remedial and beneficent purposes. *Martin Marietta Corp. v. Faulk*, 158 Colo. 441, 407 P.2d 348 (1965). Further, it is a basic rule of statutory construction that in enacting a statute, it is presumed a just and reasonable result is intended. Section 2-4-201, C.R.S. I would therefore set aside the order and remand this matter to the Industrial Commission to determine what costs, including attorney fees, were reasonably incurred by claimants in settling their claims. The amount reasonably incurred should not be charged as an amount actually collected by the claimants.

I leave to another day the question of whether the benefits paid by the carrier have priority over elements of damages not covered by such benefits.